**ANDERSON & KARRENBERG**
Heather M. Sneddon (#9520)
John A. Bluth (#9824)
Kassidy J. Wallin (#14630)
50 West Broadway, Suite 700
Salt Lake City, Utah 84101-2035
Telephone:      (801) 534-1700
Facsimile:      (801) 364-7697
hsneddon@aklawfirm.com
jbluth@aklawfirm.com
kwallin@aklawfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DAN SCOTT, an individual on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXT LEVEL FUNDING, LLC, dba Bizfi, a Delaware limited liability company; MERCHANT CASH AND CAPITAL, LLC, dba Bizfi, a Delaware limited liability company,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>**(Jury Demanded)**<br><br><br>Civil No. _____<br><br>Judge _____ |

Plaintiff Dan Scott, individually and on behalf of all other persons similarly situated, brings this action against Defendants Next Level Funding, LLC, dba Bizfi ("Next Level") and Merchant Cash and Capital, LLC, dba Bizfi ("Merchant C&C") (collectively "Bizfi" or "Defendants"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.      Plaintiff brings this class action against Defendants to secure redress because they willfully violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. § 64.1200 by causing unsolicited calls to be made to Plaintiff and other class members' telephones through the use of an auto-dialer and/or artificial, pre-recorded or artificial voice message.

2.      Defendants made or caused to be made unauthorized calls to Plaintiff's telephone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case.

4.      In response to Defendants' unlawful conduct, Plaintiff seeks an injunction requiring Defendants to cease all calls using ATDS to cellular telephones without express written authorization, and to cease all calls to individuals that have asked to be placed on Defendants' internal do-not-call list. Plaintiff further seeks an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

5.      Plaintiff Dan Scott is a citizen of the State of Utah and resides in Box Elder County, Utah.

6.      Defendant Next Level is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the state of New York.

2

7.      Defendant Merchant C&C is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the state of New York.

8.      Whenever in this Complaint it is alleged that a Defendant committed any act or omission, it is meant that the Defendant's managers, members, officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, knowledge, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's managers, members, officers, directors, vice-principals, agents, servants, or employees.

<strong><u>JURISDICTION AND VENUE</u></strong>

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this dispute involves claims under federal law. This action arises under the TCPA, which is a federal statute.

10.     The Court has general personal jurisdiction over Defendants because Defendants have continuous and systematic contacts with this District through their telemarketing efforts that target this District.

11.     The Court has specific personal jurisdiction over Defendants because Defendants purposefully directed their activities at residents of this District, and Plaintiff's injuries arise out of the Defendants' forum-related activities. The exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the wrongful conduct giving rise to this Complaint occurred in, was directed to, and/or emanated from this District.

## LEGAL BASIS FOR THE CLAIMS

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     Congress also stated that "[b]anning ... automated or prerecorded telephone calls ..., except when the receiving party consents to receiving the call ..., is the *only effective means* of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12) (emphasis added).

15.     Accordingly, the TCPA restricts telephone solicitations (*i.e.*, telemarketing) and the use of automated telephone equipment.  47 U.S.C. § 227(b)(1)(A). The TCPA limits the use of automatic dialing systems, artificial or pre-recorded voice messages, Short Message Service ("SMS") text messages, and fax machines.  *Id.* § 227(b)(1)(C); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ¶ 2, No. 02-278, 30 FCC Rcd. 7961, 7965, 2015 WL 4387780, **3 (July 10, 2015) ("2015 TCPA Order") . It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message. *Id.* § 227(b)(2)(D)(iv); 47 C.F.R. § 64.1200(b).

4

16.     In its initial implementation of the TCPA rules, the Federal Communications Commission ("FCC") included an exemption to its consent requirement for pre-recorded telemarketing calls: where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ¶¶ 32-35, No. 92-90, 7 FCC Rcd. 8752, 8769-71, 1992 WL 690928, **12-**13 (Oct. 16, 1992) ("1992 TCPA Order").

17.     Amendments to the TCPA have eliminated the "established business relationship" exemption.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ¶ 2, No. 02-278, 27 FCC Rcd. 1830, 1831, 2012 WL 507959, **1 (Feb. 15, 2012) ("2012 TCPA Order") ("[W]e ... eliminate the established business relationship exemption....").

18.     The 2012 TCPA Order also clarified that express *written* consent would be required for all "telemarketing robocalls to wireless numbers...." 2012 TCPA Order ¶ 18 ("[W]e require prior express written consent for telemarketing robocalls to wireless numbers and residential lines."). "Prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or pre-recorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

19.     Therefore, it is "unlawful for any person ... (A) to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice— ... (iii) to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call...." 27 U.S.C. § 227(b)(1)(A)(iii).

20.     Additionally, "[a]ll artificial or prerecorded voice telephone messages shall: ... state clearly the identity of the business[;] ... state clearly the telephone number ... of such business, other entity, or individual[;] [and] ... provide an ... opt-out mechanism…." 47 C.F.R. § 64.1200(b).

21.     "No person or entity shall initiate any telephone solicitation to: (1) Any residential [or wireless[*]] telephone subscriber before the hour of 8 a.m. or after 9 p.m...." 47 C.F.R. § 64.1200(c).

22.     "No person or entity shall initiate any call for telemarketing purposes to a residential [or wireless[*]] telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). "The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities ... must have a written policy ... for maintaining a do-not-call list.
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call ... receives a request ... not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if

---

[*] "The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

provided, and telephone number on the do-not-call list at the time the request is made....

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted....

(5) Affiliated persons or entities.... [A] residential subscriber's do-not-call request shall apply to the particular business entity making the call....

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls...."

*Id.*

23.     A person or entity that is the subject of a violation of the TCPA or related regulations may bring an action for injunctive relief and damages. 47 U.S.C. § 227(b)(3). The person or entity is entitled "to recover for actual monetary loss from such a violation, or ... $500 in damages for each ... violation, whichever is greater.... *Id.* § 227(b)(3)(B). "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times...." *Id.* § 227(b)(3).

24.     "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [TCPA] may ... recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(c)(5). "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times...." *Id.*

## COMMON FACTUAL ALLEGATIONS

25.     Defendant Next Level is a company that provides alternative and traditional financing for small to medium sized businesses in the United States. Next Level's website advertises that it has funded over $500 million to over 15,000 businesses.

26.     Defendant Merchant C&C is also a financing company that provides loans to businesses across the country. Merchant C&C's website advertises that it has originated $1.3 billion to over 25,000 businesses since 2005.

27.     Upon information and belief, Defendants place or cause to be placed thousands of telemarking calls to individuals nationwide.

28.     Upon information and belief, Defendants, or someone acting on behalf of Defendants, utilized and continue to utilize a sophisticated telephone dialing system to call individuals *en masse* to telemarket and promote Defendants' services.

29.     Upon information and belief, Defendants obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

30.     In Defendants' overzealous attempts to market services, they have placed or have caused to be placed phone calls to consumers who never provided consent to call and to consumers that have no relationship with Defendants.  Defendants continue to place or cause to be placed unauthorized phone calls. Defendants knowingly made and continue to make these telemarketing calls without the necessary prior express written consent of the call recipients. As such, Defendants have not only invaded the personal privacy of Plaintiff and members of the putative Class but have also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF DAN SCOTT

31.     Between approximately January 2016 to the present, Defendants contacted Plaintiff or caused Plaintiff to be contacted approximately fifty times on his cellular telephone number ending in 0945.

32.     Defendants or someone acting on Defendants' behalf used an ATDS, as defined by 47 U.S.C. § 227(a)(1), to contact Plaintiff without first obtaining Plaintiff's prior express written consent.

33.     Defendants or someone acting on Defendants' behalf used an artificial or prerecorded voice to contact Plaintiff without first obtaining Plaintiff's prior express written consent.

34.     During conversations with Defendants' call center representatives, Plaintiff asked to be put on Defendants' internal do-not-call list.

35.     Plaintiff received all calls as described above on his cellular telephone assigned a number ending in 0945.

36.     When Plaintiff first answered the call, the other end of the line was either silent for a moment followed by a series of clicks before he was engaged by a live representative of Defendants, or Plaintiff was greeted with a pre-recorded message.

37.     Plaintiff repeatedly asked Defendants not to call again because he was busy and, as the owner of a small business, was being pulled away from his work.

38.     Nonetheless, Defendants or someone acting on Defendants' behalf continued to call.

39.     Defendants invaded Plaintiff's privacy and disrupted his work day by continuing to make unwanted calls to him or by causing unwanted calls to be placed to him.

40.     At the time of the calls, Plaintiff did not have a business relationship with Defendants, nor did Plaintiff request information from Defendants about their products or services.

41.     It was obvious to Plaintiff that Defendants were engaged in a marketing campaign wherein Defendants contacted a large number of consumers using an auto dialer because he spoke with a different agent for Defendants each time, making it clear that Defendants had numerous agents engaged in its illegal telemarketing scheme.

42.     On information and belief, Plaintiff believes his number was either dialed randomly or from a database obtained by Defendants because Plaintiff never contacted Defendants or authorized Defendants to contact him.

43.     On information and belief, Plaintiff believes Defendants called him using an ATDS because Plaintiff received a large number of calls, which indicated to Plaintiff that his cell phone number was stored in an electronic database or he was randomly dialed.  Furthermore, when he answered the calls, he was greeted by a pre-recorded message and/or there was silence on the other end of the line for several seconds before a live representative engaged him, indicating a live person had not dialed Plaintiff directly.

44.     On information and belief, Defendants or someone acting on Defendants' behalf utilized an automated system to call Plaintiff on every occasion.

45.     On information and belief, and based on the circumstances of all the calls, Defendant or someone acting on Defendants' behalf called Plaintiff using an ATDS.

46.     Plaintiff understood the purpose of Defendants' calls was to solicit business from Plaintiff.

47.     The telephone number ending in 0945 that was called by Defendants or someone acting on Defendants' behalf was assigned to a cellular telephone service.

48.     Plaintiff is charged for calls to his cellular telephone ending in 0945 and pays the bills associated with the cellular telephone service.

49.     Plaintiff is the regular and exclusive user of the cellular telephone ending in 0945.

50.     Defendants' calls were not for emergency purposes.

51.     Defendants are not tax-exempt nonprofit organizations.

52.     Defendants' calls did not deliver a health care message made by or on behalf of a covered entity or its business associate.

53.     Plaintiff did not provide Defendants prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227(b)(1)(A).

54.     Plaintiff has reason to believe Defendants have called or have caused to be called thousands of wireless telephone customers to market their products and services without prior express written consent required by the TCPA.

55.     Plaintiff has reason to believe Defendants continue to call or cause to be called thousands of wireless telephone customers to market their products and services without prior express written consent required by the TCPA.

56.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the

TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls to cellular telephones without prior express written consent.

57.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendants to cease all wireless telemarketing and spam activities. Plaintiff also seeks an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

**A.     Class Allegations**

58.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following classes defined as follows (the "Class"):

> **"Robocall Class":**  All individuals in the United States who received a call made by or on behalf of Defendants to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date the Class is certified, where prior express written consent was not given by the individual to make such call.

> **"Internal DNC Class":**  All individuals in the United States who received more than one telephone call (1) made by or on behalf of Defendants within a 12 month period; (2) after requesting Defendants not call again, or otherwise asking to be placed on the Defendants' internal do-not-call list; (3) to any telephone number that was requested to be placed on the Defendants' internal do-not-call list; (4) within no less than 30 days and no more than five years after the do-not-call request.

59.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and their current or former managers, members, employees, officers, and directors; (3) Plaintiff's counsel and Defendants' counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives,

successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

60.     This suit seeks only statutory damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

61.     Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

62.     Plaintiff and members of the Class were harmed by Defendants' acts in at least the following ways:  Defendants, either directly or through agents, illegally contacted Plaintiff and the Class members via their residential, wireless, or cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff and Class members.

**B.     Numerosity**

63.      The exact size of the Class is unknown and not available to Plaintiff at this time, but individual joinder is impracticable.

64.     On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendants' records.

**C.      Commonality and Predominance**

65.      There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

66.      Common questions for the Class include, but are not necessarily limited to, the following:

a.      Whether Defendants' conduct violated the TCPA;

b.      Whether Defendants or their agent(s) made telephone calls to consumers who did not previously provide Defendants and/or its agents with prior express written consent to receive such phone calls after October 16, 2013;

c.      Whether Defendants or their agent(s) made telephone calls to consumers within more than 30 days or less than five years after those consumers requested not to be called by Defendants or their agent(s);

d.      Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

e.      Whether Defendants or their agent(s) systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

f.      Whether Defendants and their agent(s) should be enjoined from engaging in such conduct in the future.

**D.     Typicality**

67.     Plaintiff's claims are typical of the claims of the other members of the Class.

68.     Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

**E.     Adequate Representation**

69.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

70.     Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

**F.     Policies Generally Applicable to the Class**

71.     This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

72.     Defendants' practices challenged herein affect the Class members uniformly, and Plaintiff's challenge to those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**G.     Superiority**

73.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

74.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

75.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

76.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this FAC.

77.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(b)
("Robocall Class" on behalf of Plaintiff and the Class)**

78.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

79.     The TCPA provides that it is "unlawful for any person ... (A) to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice— ... (iii) to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call...." 27 U.S.C. § 227(b)(1)(A)(iii).

80.     Additionally, "[a]ll artificial or prerecorded voice telephone messages shall: ... state clearly the identity of the business[;] ... state clearly the telephone number ... of such

business, other entity, or individual[;] [and] ... provide an ... opt-out mechanism...." 47 C.F.R. §
64.1200(b).

81.     Defendants or someone acting on behalf of Defendants made unsolicited and
unauthorized calls using an ATDS or using an artificial or pre-recorded voice to Plaintiff's and
the Class Members' cellular telephones for the purpose of marketing products and/or services to
Plaintiff and the Plaintiff Class Members.

82.     Defendants or someone acting on behalf of Defendants failed to state clearly the
identity of the business on each unauthorized phone call.

83.     Defendants or someone acting on behalf of Defendants failed to state clearly the
telephone number of their business on each unauthorized phone call.

84.     Defendants or someone acting on behalf of Defendants failed to provide on each
unauthorized phone call an opt-out mechanism for the called person to make a do-not-call
request, including brief explanatory instructions on how to use such a mechanism within two
seconds of providing the identification information required.

85.     Defendants or someone acting on behalf of Defendants made the calls without
prior express written consent of the Plaintiff and Plaintiff Class Members.

86.     The calls Defendants or someone acting on behalf of Defendants placed to
Plaintiff invaded Plaintiff's privacy and disrupted his work day.

87.     The foregoing acts and omissions of Defendants constitute numerous and multiple
violations of the TCPA.

88.     Plaintiff and the Plaintiff Class Members are entitled to, and seek, injunctive relief
prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

89.     Plaintiff and the Plaintiff Class Members are also entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

90.     Additionally, because Defendants had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, or because the Defendants willfully called Plaintiff and the Plaintiff Class Members without prior, express written consent, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members up to three times for each violation.

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)**
**("Internal DNC Class" on behalf of Plaintiff and the Class)**

91.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

92.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

93.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200, provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential [or wireless] telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or

18

entity."  47 C.F.R. § 64.1200(d). The procedures instituted must meet the following minimum standards:

> a.    Written policy.  Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> b.    Training of personnel engaged in telemarketing.   Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> c.    Recording, disclosure of do-not-call requests.  If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made.  Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.  This period may not exceed thirty days from the date of such request….

> d.    Identification of sellers and telemarketers.  A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, and name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.  The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

> e.    Affiliated persons or entities.  In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

> f.    Maintenance of do-not-call lists.  A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls.  A do-not-call request must be honored for 5 years from the time the request is made.

94.     47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists.  For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers.  We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

95.     Defendants made, or directed to be made, more than one unsolicited telephone call to Plaintiff and members of the Internal DNC Class within a 12-month period.

96.     Plaintiff and members of the Internal DNC Class requested that Defendants stop calling, but Defendants continued calling beyond a reasonable time in which Defendants should have complied with the do-not-call request.

97.     Defendants or someone acting on behalf of Defendants initiated calls for telemarketing purposes to Plaintiff and members of the Internal DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from it.

98.     As a result of Defendants' conduct, Plaintiff and members of the Internal DNC Class suffered actual damages and, under 47 U.S.C. § 227(c)(5), are each entitled to an award of $500.00 in statutory damages for each violation.

99.     Additionally, because Defendants willfully or knowingly called Plaintiff and the Plaintiff Class Members more than once within a 12-month period and continued calling despite

requests that the Defendants stop calling, the Court should treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members up to three times for each violation.

## ATTORNEYS' FEES

100.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

101.    Plaintiff is entitled to recover reasonable attorneys' fees pursuant to Fed. R. Civ. P. 23(h) and requests the attorneys' fees be awarded when a class is certified.

## JURY DEMAND

102.    Plaintiff, individually and on behalf of the Plaintiff Class, demands a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Plaintiff Class, prays for the following relief:

a.    An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Anderson & Karrenberg, as lead Class Counsel;

b.    An award of actual and statutory damages of $500 for each negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.    An award of actual and statutory damages trebling the damages for each knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3);

d.       An injunction requiring Defendants and their agent(s) to cease all unsolicited telephone calling activities, and otherwise protect the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.       An award of actual and statutory damages of $500 for each negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(c)(5)(B);

f.       An award of actual and statutory damages trebling the damages for each knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C. § 227(c)(5);

g.       An injunction requiring Defendants and their agent(s) to cease all unsolicited telephone calling activities, and otherwise protect the interests of the Class, pursuant to 47 U.S.C. § 227(c)(5)(A);

h.       Pre-judgment and post-judgment interest on monetary relief;

i.       An award of reasonable attorneys' fees and court costs in this action; and

j.       All other and further relief as the Court deems necessary, just and proper.

DATED this 14th day of July, 2017.

**ANDERSON & KARRENBERG**


*/s/ Heather M. Sneddon*
Heather M. Sneddon
John A. Bluth
Kassidy J. Wallin
***Attorneys for Plaintiffs***