ANDERSON & KARRENBERG
Heather M. Sneddon (#9520)
John A. Bluth (#9824)
50 West Broadway, Suite 700
Salt Lake City, Utah 84101-2035
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
hsneddon@aklawfirm.com
jbluth@aklawfirm.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DAN SCOTT, an individual on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>NEXT LEVEL FUNDING, LLC, dba Bizfi, a Delaware limited liability company; MERCHANT CASH AND CAPITAL, LLC, dba Bizfi, a Delaware limited liability company,<br><br>    Defendants. | **PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES**<br><br><br>Case No. 1:17-cv-00119-BSJ<br><br>Judge Bruce S. Jenkins |

Plaintiff Dan Scott hereby moves the Court to enforce the parties' settlement agreement in this case and to award him his attorneys' fees in having to file this motion and make further appearances before the Court.

## INTRODUCTION AND FACTUAL BACKGROUND

Through telephonic and written communications between Plaintiff's counsel, Heather M. Sneddon, and lead counsel for Defendants Next Level Funding, LLC and Merchant Cash and Capital, LLC, Adam Silverstein of Otterbourg, P.C. in New York City, the parties settled this case on the morning of April 13, 2018, for the modest sum of $10,000—the amount of Mr. Silverstein's "full authority" to settle—right before a scheduled status conference before the Court. (*See* Declaration of Heather M. Sneddon ("Sneddon Decl."), filed concurrently herewith, at ¶¶ 4-7 and Ex. A thereto.) As such, Ms. Sneddon and local counsel for Defendants, Brent O. Hatch, contacted chambers that morning, informed the Court of the settlement, and requested that the status conference for that afternoon be stricken. (*Id*. at ¶¶ 8-9.) Based upon counsel's representations regarding the settlement, including that dismissal papers would be submitted in short order, the Court struck the hearing. (*Id*. at ¶ 10.)

Pursuant to the parties' agreement, Defendants committed to prepare the settlement documents. (*Id.* at ¶¶ 6-7 and Ex. A thereto.) After repeated prodding from Ms. Sneddon, Mr. Silverstein finally prepared and proposed draft settlement documents nearly a month later on May 9, 2018. (*Id*. at ¶¶ 11-13 and Ex. B thereto.) Based upon Mr. Silverstein's email communications with Ms. Sneddon, it is clear that Defendants had approved of these drafts—including a settlement agreement and stipulation of dismissal—before Mr. Silverstein forwarded them to Ms. Sneddon for review. (*Id*. at ¶ 12-13 and Ex. B thereto.)

Ms. Sneddon returned Plaintiff's signature on the settlement agreement to Mr. Silverstein, having made no changes to it, on May 25, 2018. (*Id.* at ¶ 14 and Ex. D thereto.) Ms.

Sneddon also consented to file the stipulation of dismissal once the settlement agreement was fully executed and Defendants had paid the settlement sum. (*Id.*)

Yet Ms. Sneddon has received <u>no response</u> from Mr. Silverstein to her May 25th email despite having left him a voice message that has gone unanswered and having sent him <u>four</u> follow-up emails—even advising him that this motion would be filed today. (*Id.* at ¶¶ 15-18 and Exs. E, F, and G thereto.)  It has been nothing but radio silence from Mr. Silverstein for nearly three weeks. (*Id.*)

That Plaintiff has been forced to file this motion to enforce a modest settlement because Defendants' lead counsel has gone AWOL after explicitly authorizing that settlement on Defendants' behalf, and when Defendants themselves clearly consented to the settlement terms, is absurd.  Accordingly, Plaintiff submits that an award of his attorneys' fees in having to bring this motion and make further appearances before the Court to enforce the parties' settlement is both warranted under 28 U.S. § 1927 for the vexatious multiplication of these proceedings and an appropriate exercise of the Court's inherent authority to sanction bad faith litigation conduct.

## ARGUMENT

**I.      The Court Should Enforce the Parties' Settlement and Require Defendants to Pay the Sum of $10,000 to Plaintiff Within Three (3) Business Days.**

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). "Issues involving the formation, construction, and enforceability of a settlement agreement are resolved by applying state contract law." *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).  "Under Utah law, courts will enforce settlement agreements 'if the record establishes a binding agreement and the excuse for nonperformance is

3

comparatively unsubstantial.'" *Nature's Sunshine Prods. v. Sunrider Corp.*, 511 Fed. Appx. 710, 714 (10th Cir. 2013) (quoting *Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 479 (Utah Ct. App. 1989)).

There can be no doubt that the parties have reached an enforceable settlement agreement in this case. The email communications between Ms. Sneddon and Mr. Silverstein indisputably establish that the parties agreed to settle it for $10,000—an incredibly modest amount—provided that Defendants prepared the settlement documents. The parties' counsel even reported to the Court that the case had been settled. Mr. Silverstein eventually prepared drafts of a settlement agreement and stipulation of dismissal, and as evidenced by his email to Ms. Sneddon, his clients had reviewed them and must have also approved them before Mr. Silverstein forwarded them to Ms. Sneddon. Plaintiff then signed the draft settlement agreement without making any changes, Ms. Sneddon confirmed approval of the draft stipulation of dismissal, and both documents were returned to Mr. Silverstein.

The fact that Defendants have not signed the settlement agreement themselves is of no legal consequence. *Mascaro v. Davis*, 741 P.2d 938, 941, n.2 (Utah 1987). Indeed, "[p]arties have no right to welch on a settlement deal during the sometimes substantial period between when the deal is struck and when all necessary signatures can be garnered on a stipulation." *Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584-85 (Utah Ct. App. 1993) (citations omitted).

And importantly, Defendants haven't suggested that no deal was struck. In fact, they represented the exact opposite to this Court when counsel contacted chambers to cancel a status conference on April 13th. Both Plaintiff's counsel and Defendants' local counsel explicitly

informed the Court that a settlement had been reached. Nothing has changed, except for the unnecessary burden and expense of Plaintiff having to pursue this motion to enforce the settlement as a result of the inexplicable failure of Defendants' lead counsel, Mr. Silverstein, to respond to Ms. Sneddon's communications to finalize and fully document and perform the agreed-upon settlement.

Therefore, Plaintiff respectfully requests that the Court enforce the settlement agreement as written, and order Defendants to pay the settlement sum of $10,000 to Plaintiff within three (3) business days as set forth in paragraph 2 of the agreement.

## II.   The Court Should Award Attorneys' Fees to Plaintiff.

In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-51 (1991), the Supreme Court confirmed that district courts have inherent authority to "impose attorney's fees as a sanction for bad-faith conduct." *See also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765-66 (1980) (American rule "does not apply when the opposing party has acted in bad faith"); *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259-59 (1975) ("[A] court may assess attorneys' fees. . . when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (cleaned up); *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018) ("court may exercise its inherent powers to sanction bad-faith conduct that abuses the judicial process").

Further, under 28 U.S.C. § 1927, "any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Indeed, "'any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to

5

the court[ ] is sanctionable.'" *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (quoting *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008)). There simply must be a "'causal connection between the objectionable conduct of counsel and multiplication of the proceedings,' such that the conduct 'result[ed] in proceedings that would not have been conducted otherwise.'" *Id*. (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)).

Under both the inherent power of the court, and 28 U.S.C. § 1927, an award of Plaintiffs' attorneys' fees in having to bring this motion and make further appearances before this Court to enforce an obviously enforceable and modest settlement is appropriate and merited. Defendants imbued Mr. Silverstein with authority to settle this case for $10,000, Defendants authorized an offer to Plaintiff in that amount, and Plaintiff accepted it. Defendants reviewed the settlement papers prepared by Mr. Silverstein and clearly must have authorized him to send them to Plaintiff's counsel. Their apparent refusal to now honor that agreement, or to participate in finalizing, fully documenting, and performing the settlement, is unacceptable and in bad faith.

Likewise, Mr. Silverstein's utter silence in the face of Ms. Sneddon's repeated inquiries to finalize the parties' settlement documents—silence that has continued <u>*even after*</u> this Court scheduled, *sua sponte*, a status hearing as a result of the parties having not timely filed dismissal papers, and <u>*after*</u> Ms. Sneddon expressly advised Mr. Silverstein that she would be filing a motion to enforce the settlement with a request for attorneys' fees if he did not respond—has unreasonably and vexatiously multiplied these proceedings.

Accordingly, Plaintiff requests that the Court award Plaintiff his attorneys' fees in the amount of $2,368.00, as against Defendants and their lead counsel, Mr. Silverstein. Plaintiff

6

further requests that he be permitted to supplement his request for attorneys' fees with respect to any further briefing on this motion and appearances before the Court. Finally, Plaintiff requests an order that his attorneys' fees be paid together with Defendants' $10,000 settlement payment to Plaintiff within three (3) business days following the Court's decision on this motion.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that his motion be granted, that the parties' settlement be enforced as written, that Defendants be directed to pay the settlement sum of $10,000 to Plaintiff within three (3) business days of the Court's decision on this motion, and that Defendants and Mr. Silverstein be directed to simultaneously pay Plaintiff's attorneys' fees, including additional amounts incurred by Plaintiff for any further briefing on this motion and appearances before the Court.

DATED: June 15, 2018

ANDERSON & KARRENBERG

/s/ Heather M. Sneddon
Heather M. Sneddon
John A. Bluth
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 15, 2018, I caused a true and correct copy of **PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES** to be served via the court's electronic notification system to the following:

Brent O. Hatch
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
bhatch@hjdlaw.com

    /s/ Heather M. Sneddon